## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Jane Doe,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KRISTI NOEM, in her official capacity, Secretary of the Department of Homeland Security;<br><br>TODD LYONS, in his official capacity, Acting Director of the Immigration and Customs Enforcement;<br><br>　　　　　Defendants. | Case No. |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Jane Doe[1], for her Complaint against Defendants KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS") and TODD LYONS, Acting Director of the Immigration and Customs Enforcement ("ICE"), each in their official capacity, states and alleges as follows:

### INTRODUCTION

1.　　Plaintiff Jane Doe is an individual in lawful F-1 visa status who is maintaining her status by being employed pursuant to post-graduate Optional Practical Training ("OPT") employment authorization. The OPT is a benefit available to international students in F-1 status that allows

---

[1] Plaintiff will separately file a motion to proceed pseudonymously.

them to work in the U.S. in their field of study, either before or after completing their studies. Plaintiff's employment was abruptly terminated after her SEVIS record was terminated by Defendants without proper notice or explanation.

2.     The Student and Exchange Visitor Information Systems (SEVIS) is a government database that tracks international students' compliance with their F-1 status, which is used by ICE to monitor student status.

3.     Plaintiff is one of thousands, if not more, F-1 students nationwide whose SEVIS record has been abruptly terminated by DHS since approximately April 4, 2025 with no lawful or valid basis.[2]

4.     Plaintiff is a Chinese national who graduated from Trine University in 2023 with a Master of Science in Business Analytics. She was legally working in Chicago under the STEM OPT (a 24-month extension of the standard OPT for F-1 students who hold degrees in eligible STEM fields). On or about April 9, 2025, DHS terminated her SEVIS record, citing "OTHERWISE– Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated," effectively stripped Plaintiff of her lawful status overnight, rendering her ineligible to work and at risk of removal, without any proper warning or explanation.

5.     Plaintiff has never been convicted of any crime. Her only criminal history involves a 2024 arrest under California Penal Code § 273.5 for alleged corporal injury to a spouse or cohabitant. However, the Santa Clara County District Attorney declined to file charges, and no

---

[2] *See* Binkley, Collin, Annie Ma, and Makiya Seminera*, Federal officials are quietly terminating the legal residency of some international college students, Associated Press, April 4, 2025,* https://apnews.com/article/college-internationalstudent-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a.

further court proceedings were scheduled. She has no other law enforcement history. There is no legitimate basis to claim that she failed to maintain status, nor was she given any opportunity to respond to the record termination.

6.    As a result of DHS's actions, Plaintiff's life has been thrown into turmoil. She was immediately forced to stop working and was terminated by her employer. She had built a promising career in private markets and had already led investment due diligence and secured millions in commitments. Professionally, her sudden absence disrupted client relationships and project deliverables. Personally, the loss of status and income jeopardized her ability to maintain housing, health, and stability. She is now married to a U.S. citizen but is preparing to seek immigration protection under the Violence Against Women Act (VAWA) based on the domestic abuse she endured during that marriage. Instead of moving toward stability, she now lives in constant fear, isolated and depressed, unsure whether she can remain in the country or support herself.

7.    Plaintiff alleges that Defendants' termination of her SEVIS record was unlawful, arbitrary and capricious, and contrary to law and agency policy, in violation of the APA and her Fifth Amendment due process rights. She seeks declaratory and injunctive relief to restore her lawful status and enjoin any enforcement actions against her on the basis of the unlawful termination.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1346(b). An actual and justiciable controversy exists between the parties under 28 U.S.C.

§2201, and this Court has authority to grant declaratory and injunctive relief. Id. §§ 2201, 2202. The Court also has authority under the APA. 5 U.S.C. §§ 701–06.

9.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391 because Plaintiff resides and works in this District, and a substantial part of the events or omissions giving rise to the claim occurred here. Defendants have waived their sovereign immunity for suits seeking injunctive relief against constitutional and statutory violations. 5 U.S.C. § 702.

## PARTIES

10.     Plaintiff is a 25-year-old Chinese citizen who has resided in Chicago, Illinois. She first entered the U.S. in 2017 to pursue undergraduate study at the University of Southern California and later completed a master's degree at Trine University. Following graduation, she was authorized to work under STEM OPT and was employed as a Research Analyst at a respected investment consulting firm in Chicago until April 2025, when her SEVIS record was terminated. She is married to a U.S. citizen and had no prior immigration violations.

11.     Defendant Kristi Noem is the Secretary of the Department of Homeland Security. She is sued in her official capacity.

12.     Defendant Todd Lyons is the Acting Director of the Immigration and Customs Enforcement ("ICE"), under the DHS. He is sued in his official capacity.

## Legal Background

13.     The Immigration and Nationality Act (INA) provides that foreign nationals may enter and remain in the U.S. for specific purposes, including full-time study. Noncitizens admitted as

academic students fall within the F-1 visa category under 8 U.S.C. § 1101(a)(15)(F). A nonimmigrant visa itself, such as an F-1, controls the noncitizen's entry into the United States. However, once admitted, the individual obtains a separate legal status that governs their stay in the U.S. F-1 status, distinct from the visa document, authorizes the student to remain in the U.S. for the duration of their studies, provided they comply with all regulatory requirements associated with that classification.

14.    Under federal regulations at 8 C.F.R. § 214.2(f), students are required to maintain full-time enrollment, avoid unauthorized employment, and update their personal and academic information through their school's Designated School Official (DSO). Completion of a degree program does not end F-1 status automatically; rather, students who successfully finish their program may be eligible to pursue post-completion OPT, including a 24-month STEM OPT extension, provided they meet the requirements under 8 C.F.R. § 214.2(f)(10)(ii).

15.    The Student and Exchange Visitor Program (SEVP), a division within U.S. Immigration and Customs Enforcement (ICE), administers the F-1 program and oversees the SEVIS, an electronic database used to track and monitor nonimmigrant students. Designated School Officials are required to update SEVIS with changes in student status, including enrollment, address, and employment. SEVIS is also the mechanism through which student records may be terminated.

16.    Terminations in SEVIS may arise through two general avenues: (1) school-initiated termination by the DSO when a student fails to comply with program regulations (for example, failure to maintain a full course of study, unauthorized employment, or withdrawal from the program); and (2) agency-initiated termination by DHS or ICE under narrowly defined circumstances. The first type of termination typically follows a known and documented change

in the student's academic or immigration circumstances. The second type is governed by stricter procedural and substantive requirements.

17.     The regulations governing agency-initiated termination are found at 8 C.F.R. § 214.1(d). Under this provision, DHS may terminate a nonimmigrant's status only in three defined scenarios: (1) when a waiver of inadmissibility or other benefit granted under INA § 212(d)(3) or (4) is revoked; (2) when Congress introduces a private bill seeking to confer lawful permanent resident status on the individual; or (3) when DHS publishes a notice in the Federal Register identifying a specific national security, diplomatic, or public safety basis for terminating status for a particular class of noncitizens. Outside of these enumerated circumstances, the regulation does not authorize ICE or DHS to unilaterally terminate a nonimmigrant's status.

18.     In practical terms, this means that the mere revocation of a visa by the U.S. Department of State—even for reasons such as an arrest, public safety concerns, or foreign policy considerations—does not by itself affect a student's in-country F-1 status. A revoked visa only prevents a noncitizen from reentering the United States after travel abroad; it does not nullify the individual's lawful status if they are already in the United States.

19.     ICE's own policy guidance confirms this principle. Specifically, ICE Policy Guidance 1004-04 (June 7, 2010)[3] states that visa revocation is not, by itself, a valid cause for terminating a student's SEVIS record. Instead, the student may continue with their course of study and remain lawfully present in the United States until the completion of the program or any authorized OPT period, provided they continue to comply with the F-1 regulations.

---

[3] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

20.     This position is reinforced by the Department of State's Foreign Affairs Manual (FAM)[4], which governs visa issuance and revocation. The FAM distinguishes between the visa (an entry document) and the status granted by U.S. Customs and Border Protection upon admission. Even where the State Department revokes a visa, the individual's underlying status remains intact.

21.     DHS regulations at 8 C.F.R. §§ 214.1(e)-(g) further define certain conduct that may constitute a failure to maintain status, such as unauthorized employment, misrepresentation, or a conviction for a crime of violence where the maximum penalty exceeds one year. However, an arrest alone—especially one where the District Attorney declined to file charges, as in Plaintiff's case—does not constitute grounds for termination of lawful status.

22.     It is also significant that SEVIS terminations, once entered, generally result in the student becoming immediately out of status. The termination effectively cuts off eligibility for employment under OPT, precludes lawful travel and reentry, and may trigger accrual of unlawful presence, with potentially serious consequences including bars to reentry and ineligibility for future immigration benefits.

23.     The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal.[5] Only the presence or absence of lawful status can be reviewed by the immigration judge. The termination of a SEVIS record therefore constitutes final agency action for purposes of APA review.

24.     Despite these severe consequences, students are not guaranteed a formal hearing or adjudication before SEVIS termination unless the matter is referred to immigration court.

---

[4] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.
[5] *See Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019).

However, under the Administrative Procedure Act (APA), an agency's decision to terminate a SEVIS record constitutes final agency action and is subject to judicial review. Courts have recognized that students may seek relief where SEVIS terminations are carried out without legal authority or due process.

25. Revocation of a visa or the existence of an arrest record, without more, does not authorize the government to terminate SEVIS status or render a student deportable. Where such terminations occur without notice, process, or adherence to regulatory limits, they give rise to claims under the APA and the Due Process Clause of the Fifth Amendment.

**Unlawful Termination of Plaintiff's SEVIS Record**

26. On or about April 11, 2025, Plaintiff's university, Trine University, notified Plaintiff that DHS had terminated her SEVIS record on April 9, 2025 without prior notice. The SEVIS system reflected the termination reason was "OTHER– Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." The university email stated that "the termination of your SEVIS record automatically ends your work authorization. You must stop working immediately to avoid unauthorized employment."

27. Plaintiff's university did not initiate or request the termination. The sole stated basis combines two vague assertions: that Plaintiff was "identified in [a] criminal records check" or that she "has had [her] visa revoked." No further detail or evidence was provided to Plaintiff or the school.

28. Plaintiff is unaware of the factual basis for the termination of their SEVIS status.

29.     On or about April 10, Plaintiff received an email notice from the U.S. Consulate General Vancouver, on behalf of the United States Department of State, that her F-1 visa had been revoked.

30.     Plaintiff's last entry into the United States was in December 2024. Her F-1 visa was valid at the time of entry, and she had been properly maintaining her status through authorized STEM OPT employment. The visa was issued on November 24, 2023 and valid until November 21, 2028. Her Form I-94 lists the duration of her F-1 status as "D/S" (Duration of Status) on her, meaning she may remain in the United States so long as she maintains a full course of study or is otherwise in a valid period of OPT.

31.     With her SEVIS record terminated, Plaintiff immediately ceased to be in valid F-1 status. Her employer placed her on leave and subsequently terminated her due to lack of work authorization. Plaintiff was in the midst of several ongoing projects and was building a promising career in investment consulting. She now faces not only professional derailment but also housing insecurity, emotional trauma, and interruption of her immigration future with her U.S. citizen spouse. She has reported clinical depression, disordered eating, and other mental health struggles arising from this abrupt loss of legal status and control over her future.

32.     DHS gave Plaintiff no prior notice that her status was in jeopardy, no chance to explain or refute any concerns, and no formal notice even at the time of termination. To date, Plaintiff has never received any written notice or correspondence from DHS explaining why her status was terminated or what "criminal record" or other issue triggered this draconian action. The only information is the terse notation in SEVIS that the school relayed to her.

33.     Plaintiff has scrupulously complied with all requirements of her status. She maintained full-time enrollment throughout her undergrad and graduate programs and completed her

degrees. She timely applied for and received OPT work authorization with all required endorsements from her DSO and USCIS. She has not engaged in any unauthorized employment or other visa violations.

34.     The purported reasons stated in SEVIS are baseless as applied to Plaintiff: She did not "fail to maintain status" in any manner within her control or knowledge. The reference to a "criminal records check" likely refers to Plaintiff's 2024 arrest, which did not result in prosecution. The District Attorney formally declined to file charges, and no court case or further action followed. Moreover, Plaintiff was in fact the victim of repeated abuse and had documented physical injuries.

35.     Plaintiff's SEVIS termination appears to be part of a broader, unexplained pattern of DHS and ICE taking adverse immigration action against international students based solely on vague references to background checks or visa revocations. Disturbingly, this crackdown seems disproportionately targeted students of certain group, race and national origins, particularly those from African, Arab, Middle Eastern, Muslim, and Asian countries.

## CAUSES of ACTION

### Count I – Violation of Administrative Procedure Act (Unauthorized SEVIS Termination)

36.     Plaintiff re-alleges and incorporates by reference all foregoing paragraphs.

37.     The APA provides that a reviewing court shall hold unlawful and set aside agency action that is "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

38.     Defendants' termination of Plaintiff's F-1 status and SEVIS record constitutes "agency action" under the APA. It is a final agency action that has determinate legal consequences for Plaintiff, and Plaintiff has no other adequate remedy in court.

39.     Defendants' actions were not in accordance with law and in excess of their statutory and regulatory authority.

40.     Defendants lacked the authority to remove Plaintiff from F-1 status.

41.     Defendants' actions were without authorization under the APA.

## Count II – Violation of Administrative Procedure Act (Arbitrary and Capricious SEVIS Termination)

42.     Plaintiff re-alleges and incorporates all prior paragraphs.

43.     The APA provides that a reviewing court shall hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

44.     A student must actually violate a material term of their nonimmigrant status,  such as failing to enroll or working illegally, or be convicted of certain crimes before their status can be terminated. Nothing in the Plaintiff's criminal or immigration background provides a basis for termination.

45.     Defendants' decision to terminate Plaintiff's status had no rational connection to any legitimate regulatory purpose.

46.     Additionally, Defendants failed to consider Plaintiff's individual circumstances at all. There is no indication any discretionary, case-by-case analysis was done; it appears to have been a blanket automated action done by computers.

47.     Defendants ignored the substantive limits of the F-1 status rules by effectively treating a mere arrest or unproven allegation as equivalent to a violation warranting status termination.

48.     Defendants' actions were arbitrary and capricious under the APA.

## Count III – Violation of Fifth Amendment (Procedural Due Process)

49.     Plaintiff re-alleges and incorporates all prior paragraphs.

50.     The Fifth Amendment to the U.S. Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." Plaintiff is entitled to its protections while present in the United States.

51.     Defendants' actions implicated both property and liberty interests of Plaintiff. She had a legitimate claim of entitlement to her F-1 status and OPT employment authorization, which constitutes a property interest. Plaintiff also had important liberty interests in continuing to live, study, and work in the U.S. free from arbitrary governmental interference.

52.     Furthermore, the designation of her status termination with a reference to criminal conduct has impugned her reputation and thus implicates a liberty interest. The vague references to criminal conduct has impugned her reputation and may prejudice her eligibility for future immigration relief. This stigmatizing label is especially harmful given that Plaintiff is preparing to seek protection under the Violence Against Women Act (VAWA) due to the abuse she experienced in her marriage. The termination record may be misinterpreted by immigration adjudicators, law enforcement, or potential employers, and it unjustly portrays Plaintiff as someone who violated immigration laws or engaged in wrongdoing, when in fact she has complied with all regulations and was a victim of domestic violence.

53.     Defendants deprived Plaintiff of these interests when they terminated her SEVIS record and effectively ended her lawful immigration status on or about April 9, 2025. This deprivation was carried out with no notice and no opportunity to be heard, either before or after the termination.

54.     Plaintiff notes that she was not in removal proceedings at the time of the status termination; DHS chose an administrative shortcut. Plaintiff was inside the U.S. in lawful status, and she did not waive any rights.

55.     Defendants' actions have effectively created and disseminated a false and derogatory official record indicating Plaintiff failed to maintain status due to criminal issues. This will be accessible to other immigration officials, law enforcement, and employers. Yet Plaintiff was given no chance to clear her name or challenge the stigma.

56.     As a direct and proximate result of Defendants' denial of procedural due process, Plaintiff has suffered the harms described above. The deprivation is ongoing –each day out of status and under threat of removal, is a continuing harm.

### Count IV – Violation of Administrative Procedure Act (Procedural Due Process)

57.     Plaintiff re-alleges and incorporates all prior paragraphs.

58.     The APA provides that a reviewing court shall hold unlawful and set aside agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

59.     On or about April 11, 2025, Plaintiff was notified that her SEVIS record had been terminated by DHS on April 9, 2025, without prior notice.

60.     DHS gave Plaintiff no prior notice that her status was in jeopardy, no chance to explain or refute any concerns, and no formal notice even at the time of termination.

61.     Defendants acted contrary to law and failed to follow required procedure.

### Count V – Violation of APA and Accardi Doctrine

62.     Plaintiff re-alleges and incorporates all foregoing paragraphs.

63.    In addition to the individual unlawfulness of Defendants' action against Plaintiff, the policy and pattern under which they acted is unlawful. Defendants have implemented an unannounced policy or practice of terminating F-1 student statuses based on improper criteria, such as mere arrest records, in a manner that violates DHS's own regulations and procedures and discriminates on the basis of national origin. This cause of action challenges that broader policy/practice under the APA and the Accardi doctrine. *Accardi v. Shaughnessy*, 347 U.S. 260 (1954)).

64.    This crackdown disproportionately targeted students of certain group, race and national origins, particularly those from African, Arab, Middle Eastern, Muslim, and Asian countries.

65.    Defendants use SEVIS terminations as a tool to pressure certain international students to leave the country or self-deport.

66.    The policy and practice described above is reviewable under the APA as either final agency action or as an unlawful general policy that the Court can halt. Defendants' policy fails APA review that it is not in accordance with law, arbitrary and capricious, and contrary to constitutional rights.

## PRAYER FOR RELIEF

67.    Plaintiff respectfully requests that this Court enter judgment in her favor and grant the following relief:

(1)  Assume jurisdiction over this matter;

(2)  Declare that the termination of Plaintiff's SEVIS status was unlawful;

(3)  Vacate and set aside the termination of Plaintiff's SEVIS record;

(4) Order Defendants to restore Plaintiff's SEVIS record and F-1 status with all attendant employment authorization and benefits as if the status had never been interrupted;

(5) Enjoin Defendants from taking any enforcement action against Plaintiff (such as detention or removal) based on the assertion that she is out of status or on any grounds arising from the April 2025 termination of her SEVIS record.

(6) Correct any DHS, ICE, or USCIS records to reflect that Plaintiff is in lawful status and that the prior termination was invalidated, so that no prejudice arises in the future;

(7) Award reasonable attorney's fees and costs pursuant; and

(8) Any further relief that the Court deems just and proper in the circumstances.

Dated: April 22, 2025,                    Respectfully submitted

By: /s/Yilun Hu

Yilun Hu
ARDC# 6337682
yhu@huang-hu.com

John Z. Huang
ARDC# 6207137
jhuang@huang-hu.com

*Attorneys for Plaintiff*
Huang & Hu PC
Landing Law Offices (Chicago)

77 W Washington St STE 800
Chicago, IL 60602

Tel: 312-782-2090